**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **HARDEE'S FOOD SYSTEMS, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case number 4:05cv2264 TCM** |
| ) | |
| **WILLIAM J. HOFFMAN, in his** ) | |
| **capacity as a court-appointed receiver of** ) | |
| **certain properties owned or leased by** ) | |
| **North Central Food Systems, Inc.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on the motion of defendant William J. Hoffman ("Defendant") to dismiss, his motion to transfer venue pursuant to 28 U.S.C. § 1404(a), and the motion of Hardee's Food Systems, Inc. ("Plaintiff") for a preliminary injunction prohibiting Defendant from selling or otherwise disposing of certain real estate.

The parties appeared before the Court for a hearing on January 5, 2006. No new evidence was presented; however, the Court then heard arguments and accepted into evidence the various affidavits and exhibits presented by the parties with their respective memorandums in support of, or in opposition to, the pending motions. Having heard arguments and reviewed the memorandums and evidentiary support thereof, the Court finds as follows.

---

[1]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

## Background

The instant lawsuit has its genesis in a November 2004 complaint and application for appointment of receiver in the United States District Court for the Southern District of New York filed by BNY Asset Solutions, Inc. ("BNY") against North Central Food Systems, Inc. ("NCFS") to enforce obligations owed BNY by NCFS. See BNY Asset Solutions, Inc. v. North Central Food Sys., Inc., 1:2004cv9395 (S.D. N.Y.). These obligations were incurred pursuant to a series of loans secured by NCFS to fund and operate various Hardee's fast food restaurants. (Hoffman Aff. ¶ 3.) In this action, BNY requested the appointment of a receiver to operate the restaurants and preserve its property while the action was pending. (Id. ¶ 4.)

After a hearing at which the parties and Plaintiff appeared, the Honorable George B. Daniels found that BNY was "clearly entitled to the appointment of a receiver" and appointed William J. Hoffman of Trigild International, Inc. (Hoffman Aff. Ex. 1 ¶ 1, Ex. 2 at 1, 24.) The Order appointing Defendant provided, inter alia, that he was to take "immediate and exclusive possession, custody and control of all real and personal property including, without limitation, the business operated by [NCFS] on the Property" and was authorized to "[m]aintain, protect, collect, liquidate, or otherwise dispose of property; including in connection with sale of associated real property[.]" (Hoffman Aff. Ex. 1 ¶¶ 6, 8(B).) (Alterations added.) The Order further provided that "all lessors . . . and or creditors seeking to enforce any claim, right or interest against [NCFS] be barred by this Order from . . . doing anything whatsoever to interfere in any way with the Receiver in the control of the receivership estate." (Id. at 13.) Additionally, Defendant was authorized to enter into a

Temporary License Agreement ("TLA") with Plaintiff and, upon the expiration of such TLA, Plaintiff would "have the immediate right, without further order of the Court, to exercise all of its rights and remedies under the [TLA], its Franchise Agreement with [NCFS]." (Id.) Upon the expiration of the TLA, Defendant was to, inter alia, "otherwise comply with all post-termination obligations as required by the [TLA]." (Id. at 14.)

Consequently, that same day, Defendant entered a TLA with Plaintiff. (Hoffman Aff. Ex. 3.) The purpose of the TLA was to allow Defendant to temporarily operate 36 Hardee's restaurants under the terms of a Master Franchise Agreement ("the Agreement") that had been terminated on NCFS' default of its obligations under the Agreement. (Id. at 1.) As part of the TLA, Defendant agreed to comply with the obligations of a franchisee as set forth in the Agreement, as modified by the TLA. (Id. at 2.) One of the obligations in the Agreement was that Defendant would not, for a period of two years after its termination, sell the franchised location to a person or entity that intended to operate a restaurant at the site. (Pl. Ex. 1 at 30.) The Agreement also provided that Plaintiff be given the option to purchase the real property at the franchised location for the fair market value, set forth a procedure to determine that value if it was disputed, and outlined the obligations of both Plaintiff and the franchisee during the period between Plaintiff's purchase notice and closing, including the obligation of the franchisee to continue to operate the franchised Hardee's. (Id. at 36.) Additionally, the Agreement provided that any dispute concerning it was to be construed in accordance with the laws of Missouri and that any suit arising under the Agreement was to be filed in the federal or state court having jurisdiction where Plaintiff's principal offices

were then located, i.e., the Eastern District of Missouri.  (Id. at 39, 40.)  These venue restrictions survived the expiration or earlier termination of the Agreement.  (Id. at 41.)

The TLA[2] was extended twice in writing for a period of 30 days each by letters dated May 25 and June 29, 2005, thereby extending the agreement to July 31, 2005.  (William Werner Aff. ¶ 7 and Exs. 4, 5.)  Plaintiff contends that e-mail correspondence extended the TLA an additional 30 days; Defendant disagrees.  (See Werner Aff. ¶ 7; Hoffman Aff. ¶¶ 16-20.)

While the second TLA extension was in effect, the parties began negotiations for the sale of 24 of the Hardee's restaurants to Plaintiff.  (Werner Aff. ¶ 9.)  During the 30-day period following the termination of this second extended period, Defendant entered into an agreement with a broker, NRC Realty Advisors, L.L.C., to market and sell the Hardee's restaurants placed under his control by Judge Daniels' order.  (Id. ¶ 10.)

Two months later, in October, contending that Defendant was ignoring his obligations under the TLA by selling franchised property without regard to Plaintiff's interest, Plaintiff sought leave to intervene in the BNY action "to establish an appropriate procedural framework within which the Court may then consider the merits of [Plaintiff's] dispute with [Defendant]."  (Hoffman Aff. Ex. 5 Declaration ¶ 4.)  A proposed complaint in intervention sought a declaration of the parties' rights and obligations with respect to 24 of the franchised properties and a preliminary and permanent injunction in connection with Defendant's

---

[2]The extended TLA governed 35 of the original 36 restaurants.  The discrepancy is not relevant to the instant dispute.

disposition of that property.  (Hoffman Aff. Ex. 5, Compl. at 2.)  Plaintiff's motion, styled

as one to show cause, was heard by Judge Daniels on October 20.  (Hoffman Aff. Ex. 6.)

Judge Daniels informed Plaintiff at the beginning of the hearing that if Plaintiff had

a contractual dispute with someone to whom Plaintiff had extended a franchise, including

Defendant, then Plaintiff should sue that someone as a franchisee.  (Hoffman Aff. Ex. 6 at

6.)  He did not intend to complicate the litigation before him by having Plaintiff come in as

a defendant, bring Defendant in as another party, and then sue Defendant on an unrelated

issue.  (Id.)  Seeking to clarify the issues before him, Judge Daniels inquired of Plaintiff's

counsel what Plaintiff wanted in addition to the right of first refusal that had already been

acknowledged as being Plaintiff's.  (Id. at 8.)  Counsel replied: "We want there is [sic] an

absolute prohibition for [Defendant], who is our franchisee, to sell the properties to a

competitor of Hardee's because doing so, that is in the franchise agreement, that would

undermine the goodwill that the Hardee's name has established in these restaurant locations."

(Id. at 9.)  The Court then inquired: "You want the right of first refusal?  You want the right

to buy instead of a competitor, or you want the right to simply say we are not going to buy

it but you can't sell it to them?"  (Id.)  Counsel replied, "We want both.  We are entitled

contractually to both."  (Id.)  The following exchange occurred shortly thereafter:

> The Court:  I am saying to you, if somebody wants to buy who is a competitor,
> and you don't want the competitor to buy it, what do you think should be the
> alternative in terms of disposing of the property?
>
> [Plaintiff's counsel]: That is not my —
>
> The Court:  That is my problem, isn't it?
>
> [Counsel]:  That is [Defendant's] issue.

The Court: That is my issue, and you're here trying to complicate that issue. . . .

The Court: . . . You either can sell the franchise or sue the franchisee. That is your alternative. You have no alternative here in this litigation. . . .

If you don't like what is being done, you have three choices: You can cancel it, and I have been saying this from day one; you can sell the franchise if you think the franchise agreement is violated; you can sue contractually on the franchise agreement with whomever you think you have a contractual agreement; or if at some point in this case there is an imminent sale – and it seems to me that nobody anticipated that there was going to be any significant sale without either notifying this court of the disagreement or going forward, with everyone's consent. . . .

Quite frankly if they want to sell this to Burger King, and you oppose that, I will do exactly what I've done in the past: I will hear you even though you aren't a party to this litigation.

(Id. at 10-12.) (Alterations added.) When Plaintiff's counsel suggested that he would file a plenary action that would end up before the court as a related case, Judge Daniels promptly informed him that he would deny it as a related case. (Id. at 13.) After further discussion, Judge Daniels instructed Plaintiff's counsel to tell Defendant to contact the court and all the parties if Defendant unreasonably rejected an offer by Plaintiff and, upon being so informed, the Court would have all the parties before him to determine whether Plaintiff's offer was reasonable and Defendant's rejection unreasonable. (Id. at 21.)

Plaintiff has appealed Judge Daniels' ruling to the Second Circuit Court of Appeals. (Hoffman Aff. ¶ 28.)

One month after Judge Daniels' hearing, on November 23, Plaintiff filed this declaratory judgment action against Defendant in Missouri state court, requesting a preliminary and permanent injunction prohibiting him from (a) selling any of the Hardee's restaurants under his control without Plaintiff's prior written consent and without extending

to Plaintiff the right of first refusal, and, (b) should the franchise be terminated, disposing of the restaurants to any of Plaintiff's competitors and not extending to Plaintiff the option to purchase the assets of the restaurants.  Defendant, a resident of California, removed the case to this Court.

Shortly thereafter, the parties in the BNY action, Plaintiff, and Defendant, appeared before Judge Daniels.  (Hoffman Aff. Ex. 7.)  Defendant informed the court that the bidding on the 34 Hardee's restaurants under his control had recently ended.  (Id. at 5.)  A few bidders, including Plaintiff, submitted an all-or-nothing bid, wanting either all of a group of restaurants or none.  (Id. at 6.)  For example, Plaintiff either wanted 24 restaurants or none. (Id.)  If Defendant were to accept a group of bids other than Plaintiff's on the restaurants, the price would be approximately two and one-half million dollars greater than Plaintiff's offer. (Id. at 7.)  A hearing on the proposed sale was set for the day before the hearing in this Court on the pending motions.

In its motion for a preliminary injunction, Plaintiff repeats its request that Defendant be prohibited from selling the Hardee's restaurants under his control without complying with the requirements of the Agreement.  In his motion to dismiss, Defendant argues that this Court lacks personal jurisdiction over him and subject matter jurisdiction over the parties' dispute.  In his motion to transfer, Defendant requests, in the alternative, that the action be transferred to the Southern District of New York.

The day before the hearing on these motions, Judge Daniels held a hearing on Defendant's request to sell the Hardee's restaurants under his control.  (Jan. 4, 2006, Tr.) Judge Daniels decided that if Plaintiff could match the highest bid, it should be awarded the

sale after the other party was told of Plaintiff's bid and had failed to submit a higher bid. (Id. at 9.) Judge Daniels granted Defendant preliminary approval for the sale, subject to a review of the contracts. (Id. at 18.)

### Discussion

Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. Defendant argues that this Court lacks personal jurisdiction over him and moves to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

It is undisputed that Defendant, a resident of California, has no office in Missouri and does not transact any business in Missouri. (Hoffman Aff. ¶¶ 26, 27, 28; January 5, 2006 Hr'g Tr.) None of the Hardee's restaurants at issue are located in Missouri. Plaintiff's principal place of business is in St. Louis, Missouri, in the Eastern District of Missouri. (Compl. ¶ 1.)

"When personal jurisdiction is challenged, the plaintiff has the burden to show jurisdiction exists." **Burlington Indus., Inc. v. Maples Indus., Inc.**, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing Gould v. P. T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir. 1992)). To survive a motion to dismiss challenging personal jurisdiction, however, "the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant," **Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd.**, 89 F.3d 519, 522 (8th Cir. 1996), and "may do so by affidavits, exhibits, or other evidence[,]" **Romak USA, Inc. v. Rich**, 384 F.3d 979, 983 (8th Cir. 2004) (alteration added). Accord **St. Paul Fire and Marine Ins. Co. v. Courtney Enter., Inc.**, 270 F.3d 621, 623 (8th Cir. 2001). When determining whether a plaintiff has

made such a showing, "the court must view the evidence in the light most favorable to plaintiff and resolve all factual conflicts in the plaintiff's favor," **Digi-Tel Holdings**, 89 F.3d at 522, although the burden remains with the plaintiff to establish the court's in personam jurisdiction, **Romak USA, Inc.**, 384 F.3d at 983-84.

"In a diversity action, [a] federal court . . . may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." **Id.** at 984 (interim quotations omitted; alterations in original). Accord **Digi-Tel Holdings**, 89 F.3d at 522. The "'ultimate objective'" of Missouri's long arm-statue[3] is "'to extend the jurisdiction of the courts of [Missouri] over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.'" **Clune v. Alimak AB**, 233 F.3d 538, 541 (8th Cir. 2000) (quoting State v. Pinnell, 454 S.W.2d 889, 892 (Mo. 1970) (en banc)) (alteration added). "Accordingly, Missouri courts have interpreted the statute broadly to cover those cases where the Due Process Clause permits the assertion of personal jurisdiction." **Id.** Thus, this Court may "turn immediately to the question whether the assertion of personal jurisdiction would

---

[3]Missouri's long arm statute, Mo.Rev.Stat. § 506.500, provides, in relevant part, as follows:

1.    Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

    (1)    The transaction of any business within this state;

    (2)    The making of any contract within this state;

    (3)    The commission of a tortious act within this state; . . .

violate the due process clause."  **Porter v. Berall**, 293 F.3d 1073, 1075 (8th Cir. 2002).

Accord **Romak USA, Inc.**, 384 F.3d at 984.

"The principles of personal jurisdiction under the Due Process Clause are well established.  Jurisdiction is appropriate only where a defendant has sufficient 'minimum contacts' with the forum state that are more than random, fortuitous, or attenuated, such that summoning the defendant would not offend traditional notions of fair play and substantial justice."  **Pecoraro v. Sky Ranch For Boys, Inc.**, 340 F.3d 558, 561 (8th Cir. 2003). Accord **First Nat'l Bank of Lewisville, Ark. v. First Nat'l Bank of Clinton, Ky.**, 258 F.3d 727, 729 (8th Cir. 2001).  "A defendant must have warning that his activities may result in his being haled into court in a particular jurisdiction and must invoke the benefits and protections of that jurisdiction by purposefully availing himself of the privilege of conducting those activities."  **Porter**, 293 F.3d at 1075.  "Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit."  **Pecoraro**, 340 F.3d at 562.

In determining whether personal jurisdiction over a nonresident defendant is appropriate, the court should exam "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties."  **Burlington Indus., Inc.**, 97 F.3d at 1102.  The first three considerations are closely related and are of primary importance.  **Id.**  Analysis of the third factor includes considerations of specific jurisdiction compared to general jurisdiction.  **Id.**  Specific

jurisdiction exists "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." **Romak USA, Inc.**, 384 F.3d at 984. "General jurisdiction refers to the power of a state to adjudicate any cause of action and does not depend on the relationship between the cause of action and the contacts." **Burlington Indus., Inc.**, 97 F.3d at 1103.

In the instant case, there is no evidence that Defendant had any contact with the State of Missouri until being named in this action. Moreover, the basis for filing this action in Missouri is the forum selection clause in the Agreement and not any business allegedly conducted by Defendant in the State. Therefore, jurisdiction in this District must lie because of the forum selection clause and not as a result of any activities of Defendant in the State of Missouri. <u>See</u> **St. Paul Fire and Marine Ins. Co.**, 270 F.3d at 624 (holding that a party may consent to personal jurisdiction by signing a contract containing a forum selection clause); **Dominium Austin Partners L.L.C. v. Emerson**, 248 F.3d 720, 726 (8th Cir. 2001) (holding that "[d]ue process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause").

Defendant further argues that the forum selection clause is voidable because a Missouri forum was not within the reasonable expectations of the original parties when he signed the TLA.

In **Rainforest Café, Inc. v. EklecCo, L.L.C.**, 340 F.3d 544 (8th Cir. 2003), the Eighth Circuit Court of Appeals expressed its inclination that federal law controlled the issue whether a forum selection clause applied in a diversity case removed to federal court. **Id.** at 546 (citing <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 31-32 (1988)). The court

noted, however, that the parties had not argued that the application of state law would have resulted in a "materially different outcome."  **Id.**  The parties in the instant case have not addressed whether Missouri law or federal law applies.  The Court will discuss both federal and Missouri law.  See, e.g., **Lyon Fin. Servs., Inc. v. Will H. Hall & Sons Builders, Inc.**, 2005 WL 503371 (D. Minn. Mar. 4, 2005) (analyzing under both federal and state law defendant's claim that forum selection clause in contract did not apply to suit against it).

Under federal law, "[f]orum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." **M.B. Restaurants, Inc. v. CKE Restaurants, Inc.**, 183 F.3d 750, 752 (8th Cir. 1999) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)) (alteration added). "The fact that the contract was a form contract and that the individual clauses were not actually negotiated does not render the clause per se unenforceable."  **Id.** (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593 (1991)).  Additionally, general allegations that a party was induced by fraud to enter into a contract are insufficient to raise an issue that a forum selection clause within the contract may be unenforceable because of fraud.  **Marano Enters. of Kansas v. Z-Teca Restaurants**, 254 F.3d 753, 757 (8th Cir. 2001).  See also **M.B. Restaurants, Inc.**, 183 F.3d at 752-53 (rejecting challenge to forum selection clause by plaintiff based only on belief that the contract was procured by fraud and presented without any allegation that the forum selection clause was itself a product of fraud, and noting that fraud must be pled with particularity under Fed.R.Civ.P. 9(b)).  "[I]nconvenience

to a party is an insufficient basis to defeat an otherwise enforceable forum selection clause."

**Id.** at 753 (alteration added).

Similarly, under Missouri law, a forum selection clause is to be enforced if the clause was "obtained through freely negotiated agreements absent fraud and overreaching" and if its enforcement would not be "unreasonable and unjust." **Whelan Sec. Co. v. Allen**, 26 S.W.3d 592, 596 (Mo.Ct.App. 2000). "A forum selection clause may be unreasonable if it results in undue hardship, such as a necessity to travel or transport witnesses such a distance that expenses would render access to the courts impractical." **Id.** "[T]he party seeking to avoid [a forum selection clause's] application sustains a heavy burden to show that the clause is unfair or unreasonable." **State ex rel. J.C. Penney Corp. v. Schroeder**, 108 S.W.3d 112, 113-14 (Mo.Ct.App. 2003) (alterations added) (interim quotations omitted). Consequently, a general allegation that a forum selection clause would impose an unfair burden due to the distance between the defendant and the selected forum is insufficient to show an undue hardship. See **Whelan Sec. Agency**, 26 S.W.3d at 596-97.

In support of his contention that the forum selection clause should not be enforced, Defendant argues that when signing the TLA he did not anticipate that it would govern anything other than the manner and standard in which he operated the Hardee's restaurants under his control. Defendant additionally contends that he did not understand that by signing the agreement he granted extensive rights to Plaintiff, including the right of Plaintiff to "hale" him into a Missouri court.

"Under Missouri law, 'a person who has an opportunity to read a document but signs it without doing so is held to have knowledge of the document's contents, absent a showing

of fraud.'" **Midwest Printing, Inc. v. AM Int'l, Inc.**, 108 F.3d 168, 170 (8th Cir. 1997) (quoting United States for Use of Bussen Quarries, Inc. v. Thomas, 938 F.3d 831, 833 (8th Cir. 1991)). See also **Farmland Indus., Inc. v. Bittner**, 920 S.W.2d 581, 584 (Mo.Ct.App. 1996) ("Missouri has long recognized that a person signing an agreement has a duty to read it."). "[A]bsent fraud, accident or mistake, a party is held to have had knowledge of a contract which he or she had an opportunity to read but did not by reason of indolence, folly or careless indifference to the ordinary and accessible means of information." **Mercantile Trust Co. v. H.M. Carp.**, 648 S.W.2d 920, 924 (Mo.Ct.App. 1983) (alteration added) (interim quotations omitted). Accord **Savannah Place, Ltd. v. Heidelberg**, 122 S.W.3d 74, 79 (Mo.Ct.App. 2003).

Defendant is an attorney. His company, Trigild, has managed hotels and restaurants for 35 years. He has been appointed as a receiver in state and federal court hundreds of times and is a real estate broker. He specializes in managing distressed properties in situations similar to the one present in the instant case. When Defendant was appointed as the receiver in this case, he signed the TLA in his capacity as the receiver and twice agreed to its extension. The uncontroverted evidence before the Court is that the TLA incorporated the Master Franchise Agreement in its entirety. The language in the Agreement clearly provides that Missouri law applies in interpreting the agreement, and that jurisdiction and venue is vested where Plaintiff has its principal place of business. Plaintiff's continuing presence in the BNY action proceedings gives rise to the assumption that Defendant knew, or should have known, where that principal place of business was. Indeed, Defendant visited Plaintiff's St. Louis headquarters at some point.

Clearly, had Defendant read the Agreement he would have understood its forum selection clause. There is no allegation of any fraud being perpetrated that prevented him from reading the Agreement or from understanding its provisions. Indeed, Defendant's expertise in real estate dealings is the reason why he is involved in the events giving rise to this action.

Defendant's motion to dismiss for lack of personal jurisdiction will be denied.

<u>Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction.</u> Defendant next challenges this Court's subject matter jurisdiction. "Because jurisdiction is a threshold question, the court may look outside the pleadings in order to determine whether subject matter jurisdiction exists." **Green Acres Enters. Inc. v. United States**, 418 F.3d 852, 856 (8th Cir. 2005). The burden of proving subject matter jurisdiction is on Plaintiff. **<u>Id.</u>** <u>Accord</u> **V S Ltd. P'ship v. HUD**, 235 F.3d 1109, 1112 (8th Cir. 2000). An argument that an action may not be brought in one court against a receiver appointed by another court without leave of that court challenges the first court's subject matter jurisdiction. <u>See</u> **Muratore v. Darr**, 375 F.3d 140, 143 (1st Cir. 2004).

Title 28 U.S.C. § 959(a) provides that "[t]rustees, receivers or managers of any property . . . may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice . . ."

". . . [Section] 959(a) was originally enacted in response to the Supreme Court's decision in <u>Barton v. Barbour</u>, 104 U.S. 126 (1881)." **Diners Club, Inc. v. Bumb**, 421 F.2d

396, 398-99 (9th Cir. 1970) (alterations added).  In **Barton**, the Supreme Court held that a personal injury action against Barton in his capacity as receiver of a railroad was improperly filed in the United States District Court for the District of Columbia because he had been appointed by a Virginia court.  **Barton**, 104 U.S. at 126-27, 131.  The Supreme Court further held that such a suit may be filed against a receiver only by leave of the appointing court.  **Id.** at 131.  In his dissent, Justice Miller argued that he knew of "no principle or precedent whereby a court of law, having before it a plaintiff with a cause of action of which it has jurisdiction, and a defendant charged with an act also within the jurisdiction, is bound or is even at liberty to deny the plaintiff his lawful right to a trial because the defendant is a receiver appointed by some other court . . ." **Id.** at 140.  Justice Miller distinguished between the duty of courts of equity to protect "their receivers, or funds in their hands," and the duty of courts of law to give "suitors properly before them the trial of their rights . . ." **Id.** at 140-41 (alteration added).

"[T]he purpose of § 959(a) was to enact Mr. Justice Miller's dissent into law." **Diners Club, Inc.**, 421 F.2d at 399 (alteration added).  Section § 959(a) permits a court of law to exercise its jurisdiction in actions for damages and yet "prevent interference with the orderly administration of the estate." **Id.** at 400.  The court which appoints the receiver "has the right, while continuing to exercise its prior jurisdiction, to determine for itself how far it will permit any other court to interfere with such possession and jurisdiction." **Field v. Kansas City Refining Co.**, 9 F.2d 213, 215 (8th Cir. 1925) (citations and quotations omitted).  "Some suits affecting the res will place only slight burdens on the reorganization court.

There may be good reasons for permitting them to continue in [the other] forum.  Other suits, even though only money damages are demanded, could conceivably so embarrass administration of the debtor's corporation, as to make it proper that they be stayed." **Diners Club, Inc.**, 421 F.2d at 400-01 (interim citations and quotations omitted) (alteration added). Thus, § 959(a) permits "actions redressing torts committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a [receiver], for example, conducted a retail store," **Muratore**, 375 F.3d at 144 (quoting Carter v. Rodgers, 220 F.3d 1249, 1254 (11th Cir. 2000)) (alteration added), but "does not apply to suits against [receivers] for administering or liquidating the . . . estate," **Carter**, 220 F.3d at 1254 (alterations added).  When the suit relates to the receiver's tasks incident to consolidation, preservation and liquidation of the debtor's estate, consent of the appointing court must be obtained.  **Id.**  See, e.g., **Muratore**, 375 F.3d at 145-47 (finding § 959(a) exception not applicable in action against trustee for improperly liquidating assets of estate); **Carter**, 220 F.3d at 1252, 1254 (finding § 959(a) applicable to action against trustee for breach of fiduciary duties involving the administration and liquidation of the estate and, therefore, leave under § 959 must be obtained).

The Sixth Circuit Court of Appeals in **In re DeLorean Motor Co.**, 991 F.2d 1236 (6th Cir. 1993), found that the necessity to obtain leave from an appointing court before filing a malicious prosecution and abuse of process action against a bankruptcy trustee arose from the common law and not from § 959.  **Id.** at 1240-41.  Section 959's exception did not apply to suits against the trustee "for actions taken while administering the estate.  Merely

collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted." **Id.** at 1241 (interim citation and quotations omitted). Cf. **Diners Club**, 421 F.2d at 397, 402 (holding that a suit on a contract entered into by a trustee for the production and sale of 1.5 million cards after the trustee was appointed as trustee of a business machine company would be permitted without leave of the appointing court because (a) there was no showing that the prosecution of the action would "embarrass the administration" of the debtor's estate and (b) the maximum amount of recovery in the action would not deplete the debtor's estate).

As the foregoing cases demonstrate, a suit for damages will often be permitted under § 959(a) without leave of an appointing court because such suit involves the receiver's or trustee's acts in carrying on the business of the estate. The **Diner's Club** court found an exception to the § 959(a) exception in actions for damages in which a recovery could disrupt or deplete the estate; in such case, leave of the appointing court was required. Without exception, the above-cited cases found it to be within the appointing court's power in matters of equity to control the case. Thus, actions involving the liquidation, consolidation, and preservation of the estate require leave of the appointing court and are not considered actions that involve the receiver's acts or transactions in carrying on the normal business of the property.

In the instant case, Plaintiff's cause of action for injunctive relief asks this Court to order Defendant, a receiver appointed by the United States District Court for the Southern District of New York, to comply with the terms and restrictions of the TLA and the Master

Franchise Agreement when placing Hardee's restaurants for sale.  Specifically, Plaintiff asks this Court to enjoin Defendant from selling or disposing of the Hardee's restaurants (a) without Plaintiff's consent and without providing Plaintiff with the right of first refusal, and (b) to a competitor of Plaintiff's.  This is the same relief Plaintiff requested of Judge Daniels. The TLA and the Master Franchise Agreement do limit Defendant's ability to sell the Hardee's restaurants that are under his control pursuant to Judge Daniels' March 2005 Order.

The Court finds that the requested relief would interfere with the business of liquidating and administering the estate as ordered by Judge Daniels of the United States District Court for the Southern District of New York.  Judge Daniels has ordered Defendant to liquidate NCFS' property and has already approved of his plan to sell the Hardee's restaurants in question – a plan which apparently translates into more assets for the estate than Plaintiff has offered.  Any order by this Court going to the merits of Plaintiff's requests will certainly interfere with and affect the appointing court's existing order in equity.

Plaintiff argues, however, that Judge Daniels granted Plaintiff leave to file this action. This is an over-broad characterization of Judge Daniels' rulings.

Judge Daniels denied Plaintiff's motion requesting that it be granted leave to file a complaint in intervention against Defendant – a complaint requesting similar injunctive relief to that sought in this action.  Plaintiff has appealed the denial of its request to the Second Circuit Court of Appeals.  Judge Daniels did suggest to Plaintiff that if it, not a party to the BNY action before him, wanted to assert a claim against Defendant, also not a party to the BNY action before him, arising from the operation of its franchises, it do so in another court. He clearly limited, however, his order to an action by which Plaintiff could be compensated

in damages and which would not interfere with the BNY receivership case, a case in which he has already approved the liquidation of various Hardee's restaurants.

Title 28 U.S.C. § 959(a) limits suits against trustees and receivers and requires the appointing court's approval to file such suits unless the suit falls into the statute's one exception. Had Plaintiff sought damages for Defendant's handling of the Hardee's franchises at the 34 locations during his receivership, the suit could arguable be appropriately filed here. The Court finds, however, that the injunctive relief Plaintiff seeks herein does not fall within § 959(a)'s statutory exception.

Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(1) will be granted.

In his motion to transfer, Defendant alternatively requests that the Court transfer the action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). In addition to this request being moot, Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that a court <u>shall</u> <u>dismiss</u> an action over which it lacks subject matter jurisdiction. Fed.R.Civ.P. 12(h)(3) (emphasis added). <u>See</u> <u>also</u> **Muratore**, 375 F.3d at 147-48.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss is **DENIED** insofar as Defendant seeks a dismissal on grounds of lack of personal jurisdiction and is **GRANTED** insofar as Defendant seeks a dismissal for lack of subject matter jurisdiction. [Doc. 4]

**IT IS FURTHER ORDERED** that Plaintiff's motion for a preliminary injunction is **DENIED**. [Doc. 6]

**IT IS FINALLY ORDERED** that Plaintiff's motion for a temporary restraining order and Defendant's motion to transfer are each **DENIED** as moot. [Docs. 35, 6]

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  18th  day of January, 2006.